UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

--------------------------------x

UNITED STATES OF AMERICA,

Plaintiff,

v.

MARK GORMAN and SEAN GORMAN,

Defendants.

--------------------------------x

07-MJ-1000

225 Cadman Plaza
Brooklyn, New York

October 10, 2007

TRANSCRIPT OF CIVIL CAUSE FOR STATUS CONFERENCE
IN THE MATTER OF EXTRADITION OF MARK GORMAN AND SEAN GORMAN
BEFORE THE HONORABLE VIKTOR V. POHORELSKY
UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For the Government: RICHARD LUNGER, ESQ.
U.S. Attorney's Office
One Pierrepont Plaza
Brooklyn, New York 11201

For Mark Gorman: ANDREW CARTER, ESQ.
Federal Defenders of New York, Inc.
16 Court Street
Brooklyn, New York 11241

For Sean Gorman: DAVID WEISS, ESQ.
41 Madison Avenue
New York, New York 10010

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ OCT 15 2007 ★
BROOKLYN OFFICE

Court Transcriber: RUTH ANN HAGER
Typewrite Word Processing Service
356 Eltingville Boulevard
Staten Island, New York 10312

Proceedings recorded by electronic sound recording, transcript produced by transcription service

(Proceedings began at 11:08 a.m.)

THE CLERK: This is a status conference in 07-MJ-1000 in the matter of the extradition of Sean Gorman and Mark Gorman. Counsel, please state your appearances for the record.

MR. LUNGER: Richard Lunger for the Government, Your Honor. I'm standing in for Valerie Tocci today.

MR. WEISS: David Weiss for Sean Gorman.

MR. CARTER: Andrew Carter, Federal Defenders, for Mark Gorman. Good afternoon.

THE COURT: Good afternoon.

MR. CARTER: Sorry, good morning, Your Honor.

THE COURT: Good morning. You're right. It's --

MR. CARTER: Still morning.

THE COURT: Still morning. Okay. Well, this was set -- this conference was scheduled when only one of the two persons whose extradition is sought had been arrested and I understand that the second -- I'm remember -- I believe it was Mark Gorman who appeared before me. It was with Mr. Carter.

MR. CARTER: That's correct. Yes.

THE COURT: And now Sean Gorman is here, who was only arrested last week.

The purpose of the conference when scheduled with Mr. Carter was to, I guess, give Mr. Carter a chance to review the papers and then find out from the Government what further

papers were going to be submitted, if any, and Mr. Carter, as I recall, indicated at that time that they were definitely going to be fighting extradition.

Mr. Weiss is -- you're relatively new to the case, I gather, so I don't know whether you --

MR. WEISS: Relatively.

THE COURT: Yes. I don't know how much you've had a chance to review the papers yet and so let me start with Mr. Carter. Is it still your intention to oppose the extradition request?

MR. CARTER: Yes, Your Honor.

THE COURT: Do you know on what basis you're going to be opposing it?

MR. CARTER: On probable cause.

THE COURT: On probable cause.

MR. CARTER: Yes. For lack of probable cause.

THE COURT: Okay. And so is -- identity is not an issue. All right. And Mister --

MR. WEISS: Same holds true with respect to Sean Gorman. The issue with -- and in particular as it -- with respect to the lack of probable cause, the treating allows Mr. Gorman to raise defenses available. And one of the defenses specified and indeed in the document that have been disclosed is the defense of -- self-defense in defense of property, which is apparently what this was. I mean, this is

the pub that these gentlemen own, and the so-called victim was a burglar who after being apprehended attacked them with a claw hammer, in essence, and that's by way of proffer what we will establish at hearing.

THE COURT: Um-hum.

MR. WEISS: Should we establish that, we would expect or we would ask the Court to deny extradition.

THE COURT: Um-hum. Okay. Well, interesting issue. And the question is then -- I mean, there's sort of a -- does this court have to make a finding on what's essentially a defense, right, to -- and whether the probable cause asserted by the -- by Great Britain is eroded by evidence of self-defense?

MR. WEISS: Exactly.

MR. CARTER: Well --

THE COURT: And --

MR. CARTER: The statute actually that the charge with -- actually has as its element that is an unlawful assault, unlawful application of force.

MR. WEISS: Right.

MR. CARTER: So I don't think it would be in the traditional sense in terms of the American jurisprudence that it's a real -- I think it is actually an element of the offense, so I think that actually if there is self-defense in defense of property then there is no probable cause.

Unlawful --

THE COURT: Well, you mean, there's no crime.

MR. CARTER: There's no crime.

THE COURT: I mean, it doesn't -- it's a definition of the crime itself.

MR. CARTER: Of the crime itself. To believe there's probable cause to believe that they committed this actual crime, there has to be unlawful -- that's exact wording.

THE COURT: Use of force.

MR. WEISS: In other words, apparently there's a difference --

MR. CARTER: "Whoever shall unlawfully and maliciously by any means whatsoever wound or cause any grievous bodily harm to any person."

THE COURT: Um-hum. Well, I mean, I'm probably going to need some legal elucidation, you know, of --

MR. WEISS: We'll try to help.

THE COURT: What?

MR. WEISS: We'll try to help.

THE COURT: Because the standard of probable cause -- it's going to be interesting.

MR. WEISS: I suppose the more precise question right now is when is the Government going to be available since --

MR. LUNGER: Your Honor, my instructions from Ms. Tocci is if we could schedule that hearing before October 24th. She'll be out of the country from that date until November 1st.

THE COURT: Well, has -- what does the Government intend to do by way of establishing probable cause?

MR. LUNGER: Well, Your Honor, if a cursory reading of the complaint shows that the assault on the victim resulted in putting him into the hospital intensive care unit for several weeks during which time he remained in a coma, so we would vigorously assert that that is not a lawful defense of property. That is an unlawful defense of property and there's probable cause for the crime charging and the Court need not address the affirmative defense, which is not --

THE COURT: Well, it's --

MR. LUNGER: Which is not a problem.

THE COURT: It's not an affirmative defense.

MR. WEISS: It's not an affirmative defense.

THE COURT: What they -- what I'm hearing is that they want to couch this as the Court's inquiry into whether the use of force -- whether there's probable cause to believe that the use of force was unlawful as opposed to lawful, right? I mean, that's the way you want to couch it, so let's talk about -- forget about affirmative defense. Just want to -- now, and then the question is, you know, what law do I

look to to decide what's lawful and unlawful, do we have United States law, and is it defense of property or do I look at British law that defines whether it's -- you know, what's the lawful extent of the use of force in defense of property or person. I mean, maybe there's not -- maybe these are all distinctions that are without a difference, but what -- the real question I asked, though, that got us started here was what do you intend to do by way of proof. Forget about what the legal issues are. What do you intend to do by way of proof? Are you going to be offering affidavits? Are you going to be bringing a witness over? How are we going to do this? From your standpoint --

MR. LUNGER: Yes, it's --

THE COURT: Are you going to be offer -- and then I'll ask them what kind of proof they want to put on. And then, you know, then I -- that'll determine what kind of hearing and how much time we're going to need to spend and when I'm going to be able to schedule it.

MR. LUNGER: I understand, Your Honor. I'm not sure we're required to offer live witnesses. I will certainly look into the law in that, but I believe that the package provided by the foreign government, which I think has been certified and I think proof has -- I can present the original package with all the ribbons and such [ph.], if you will, is sufficient to establish criminal cause.

THE COURT: Okay.

MR. LUNGER: So I'm not sure that that we'll be putting on any live witnesses, Your Honor.

THE COURT: Okay.

MR. LUNGER: I also just want the record to be clear. I understand how the defense wants to frame the issue, but under United Kingdom law, I'm not so sure what they're saying isn't an affirmative defense and I'm not so sure that their interpretation of the statute is necessarily the correct one, and I obviously want to do research on that. I understand what the text is.

MR. CARTER: I can give you the cite of a case for English law, Your Honor.

THE COURT: From what?

MR. CARTER: A case from Great Britain.

THE COURT: Oh, good.

MR. CARTER: Give you the cite.

THE COURT: Citation may be helpful, but I don't know if there are reporters that are going to give me --

MR. CARTER: I believe, yes, you're able to get some of this through Westlaw and Lexus, I believe.

THE COURT: Okay. Maybe you could supply a copy. You said you were actually able to find it on Westlaw?

MR. CARTER: Able to -- yeah. An intern did most of the research, but [inaudible]. R. v. Gladstone, R, capital R,

v. Gladstone Williams. It's a 1984 case.

THE COURT: In what court?

MR. CARTER: And the cite is 78, and then Cr., then Apt. R. 276. That's from the Court of Appeals.

THE COURT: Okay. And that sets out, what, the standard for malicious --

MR. CARTER: That sets out --

THE COURT: Or sets up the standard for what constitutes lawful or unlawful?

MR. CARTER: I believe that case states it because this particular statute specifies that defendant's actions must be unlawful. The Court of Appeals held that the Government bears the burden of showing that defendant's actions were unlawful.

THE COURT: Um-hum.

THE COURT: Okay.

MR. WEISS: I would also point out that --

THE COURT: And this [inaudible] what you're saying doesn't really offer guidance on what constitutes lawful versus unlawful use of force I gather.

All right. So it looks like Mr. Unger -- Lunger. Excuse me.

MR. LUNGER: Yes, Your Honor.

THE COURT: Is unsure about whether there's going to be any testimony. Are you going to offer any testimony?

MR. WEISS: On behalf of Sean Gorman, I think we can anticipate that Sean Gorman will be taking the stand.

THE COURT: Okay.

MR. CARTER: And in terms of Mark Gorman, I do not believe Mr. Mark Gorman will be taking the stand.

THE COURT: Is any other evidence that you would be offering?

MR. WEISS: I don't anticipate calling any witnesses on behalf of Sean Gorman.

MR. CARTER: I don't anticipate calling any witnesses. There are some other documents that I'm attempting to try to get my hands on.

THE COURT: From England.

MR. CARTER: Yes.

THE COURT: Okay. Well, how --

MR. CARTER: I believe that I'll be able to proceed very soon. I can proceed next week to get the documents if I can. If I can't get the documents I'll proceed without them.

MR. WEISS: As can we.

THE COURT: Okay.

MR. LUNGER: A week is fine.

THE COURT: Okay. So we'll just -- I'll schedule a hearing and then I may end up not being able to rule right away because I'll have to -- I need to get some education on this. So whatever you want to try to drum up to try to help

me decide the legal issue, I've got to understand the legal issue a little bit better about what constitutes lawful versus lawful use of force in this circumstance so, you know.

MR. CARTER: How's the afternoon of the 16th?

THE COURT: I take it you are anticipating that the total amount of testimony time would be less than three hours?

MR. LUNGER: Yes.

MR. CARTER: Yes.

MR. WEISS: I was actually going to ask for a week from today, the 17th, just to give an extra few days to --

MR. CARTER: 17th is not good for me.

MR. WEISS: How about the 18th?

MR. CARTER: The 18th is great, but the 19th is fine. 16th in the afternoon is fine.

MR. WEISS: Your Honor, if that's acceptable to you.

MR. LUNGER: The 18th is fine, Your Honor.

THE COURT: The 19th is Friday.

MR. LUNGER: That works for the Government, Judge.

THE COURT: But I can't get started till 2:30.

MR. CARTER: That should be sufficient.

MR. WEISS: Okay, Judge.

[Pause in the proceedings.]

THE COURT: And as I understand it, there was a -- with respect to Sean Gorman there was a temporary order of detention ordered. Is there any application for bail?

MR. WEISS: It's a little unclear as to whether there's actually an immigration detainer on them. The papers are several Xs. It's not quite clear.

THE COURT: Well, even if there were not, there's a rather high standard, as you may be aware. It's not -- this is not a bail or a format --

MR. WEISS: Understood.

THE COURT: And it's accordingly a pretty rare circumstance for people to get bail in extradition cases, so --

MR. WEISS: Would the Court consider setting some kind of bail, though?

THE COURT: Actually, the Court -- you know, I mean, I -- you have to establish exceptional circumstances. That's the standard and it's not just a matter of whether the Court believes somebody would reappear. I don't know if you're familiar with the case law, but it's pretty --

MR. WEISS: It becomes a little bit more --

THE COURT: Exceptional circumstances is a standard that has not been met in recent -- in my recent experience in this case. You have the burden of establishing some exceptional circumstance, something beyond that the person is not a flight risk. I mean, got a -- you have to establish that, too, but it's -- and there's got to be something beyond that.

MR. WEISS: Unfortunately, we don't have the bail package that would presumably overcome that presumption at this point.

THE COURT: Well, I'll enter a permanent order of detention and you can -- without prejudice to come up to an application if you can find something that might satisfy that standard.

[Pause in the proceedings.]

THE COURT: Is there any other matter to address before we adjourn today?

MR. WEISS: I have nothing.

MR. LUNGER: No, Your Honor.

MR. CARTER: No.

MR. LUNGER: Thank you.

THE COURT: We're adjourned.

(Proceedings concluded at 11:24 a.m.)

* * * * * *

* * * * * *

I certify that the foregoing is a court transcript from an electronic sound recording of the proceedings in the above-entitled matter.

Ruth Ann Hager

Dated: October 12, 2007